1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

WESTERN MAGNESIUM
CORPORATION,

NO. 2:22-CV-0108-TOR

8

Plaintiff,

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

9

10

v.

JAMES SEVER,

11

12

Defendant.

13        BEFORE THE COURT are Defendant's Fed. R. Civ. P. 12(b)(6) Motion to

14   Dismiss (ECF No. 14) and Motion to Dismiss Under Doctrine of *Forum Non*

15   *Conveniens* (ECF No. 16).  These matters were submitted for consideration with

16   oral argument on September 21, 2022.  Scott C. Oostdyk and Evelyn E. Winters

17   appeared on behalf of Plaintiff.  Carl J. Oreskovich and Andrew M. Wagley

18   appeared on behalf of Defendant.  The Court has reviewed the record and files

19   herein, and is fully informed.  For the reasons discussed below, Defendant's Fed.

20   R. Civ. P. 12(b)(6) Motion to Dismiss (ECF No. 14) is **denied as moot** and

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

Defendant's Motion to Dismiss Under Doctrine of *Forum Non Conveniens* (ECF No. 16) is **granted**.

## BACKGROUND

This case concerns Defendant James Sever's former employment as the Chief Technical Officer ("CTO") of Plaintiff Western Magnesium Corporation. *See* ECF No. 1.  On May 11, 2022, Plaintiff filed the complaint, pleading claims for breach of contract and breach of fiduciary duty.  *Id.* at 11-12, ¶¶ 43-55.

On August 1, 2022, Defendant filed the present motions to dismiss.  ECF Nos. 14, 16.  The parties timely filed their respective response and reply.  ECF Nos. 20, 22-23.  The following facts are drawn from Plaintiffs' complaint, which are accepted as true for the purposes of the present motion.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

## FACTS

Plaintiff is a producer of magnesium metal, originally incorporated in 1966 as Ft. Lauderdale Resources Inc.  ECF No. 1 at 3, ¶¶ 6-7.  Ft. Lauderdale Resources Inc. changed its name to Amcorp Industries Inc. in 1990, became Molycor Gold Corporation in 1996, became Nevada Clean Magnesium Inc. ("NCM") in 2012, and became Western Magnesium effective May 14, 2019.  *Id.*

On July 17, 2013, Plaintiff, at the time NCM, announced receipt of a paper by Mr. Sever, a resident of Washington State, where he represented that he

developed a process to reduce the carbon footprint of the production process by 51 metric tons per hour of operation.  *Id.*, ¶¶ 2, 12.

On October 27, 2013, Mr. Sever entered into a licensing agreement with NCM to provide his "unique knowledge and concepts" to NCM's mining facility, and other NCM-owned facilities involved in the commercial production of magnesium.  *Id.*, ¶ 13.  Mr. Sever licensed NCM his "Condenser Concept" which he represented would "enable the commercial production of magnesium by direct reduction of carbon."  *Id.*, ¶ 15.  Mr. Sever joined NCM's Board of Directors and was responsible for developing the financial and technical trajectory of the company's efforts to transform the magnesium industry.  *Id.*, ¶¶ 11, 14.  In his role on the NCM Board, Mr. Sever occasionally tendered his proxy vote to NCM's Chairman Ed Lee.  *Id.* at 7, ¶ 26.

In 2016, Mr. Sever threatened to abandon his obligations with NCM and did constructively abandon his obligations for a short period of time before returning and resuming all responsibilities as previously agreed.  *Id.,* ¶ 18.

By April 2019, Mr. Sever produced a magnesium ingot from dolomite at one of NCM's properties.  *Id.*, ¶ 19.  On or about April 30, 2019, NCM and Mr. Sever concluded an Executive Employment Agreement ("Agreement") where Mr. Sever agreed to serve as NCM's Chief Technical Officer ("CTO") and report to NCM's President and Chief Operating Officer.  *Id.*, ¶ 23.  In this role, Mr. Sever was

1    "responsible for identification and development of the technical direction" of

2    NCM's production process" and Mr. Sever was required to interface with NCM's

3    auditors, accountants, bankers, lenders, regulators, and legal counsel when

4    required.  *Id.*, ¶¶ 23-24.  The Agreement also bound Mr. Sever to commitments

5    involving the next stage of process modeling.  *Id.* at 6-7, ¶ 25.

6          On May 9, 2019, the Supreme Court of British Columbia recognized as valid

7    the vote of the NCM shareholders and directors, including Mr. Sever by proxy, to

8    discontinue NCM as a Canadian company and re-establish it as Western

9    Magnesium Corporation in Delaware in the United States.  *Id.* at 7-8, ¶ 27.

10          On May 13, 2019, Western Magnesium formally formed and relocated in

11   Delaware, with Board support.  *Id.*  On May 14, 2019, Western Magnesium

12   discontinued from the jurisdiction of the Business Corporations Act of British

13   Columbia and domesticated in the United States in the State of Delaware.  *Id.* at 3,

14   ¶ 8.  Following the formation as Western Magnesium in the United States, Mr.

15   Sever neglected his duties a director and mirrored his actions in 2016 when he

16   threatened to walk away from NCM.  *Id.* at 8, ¶ 29.  Although Mr. Sever did not

17   formally resign from the Western Magnesium Board in 2019 or anytime thereafter,

18   Mr. Sever ceased participating in director meetings or participating by proxy, or

19   otherwise aid in the governance of the company.  *Id.*, ¶ 30.

20

On June 27, 2019, Western Magnesium's President and Chief Executive Officer Sam Ataya announced a breakthrough in its continuous production process. *Id.*, ¶ 31.  Mr. Ataya directed Mr. Sever to dedicate full efforts to develop a documented engineering process vetted by third parties that would make the continuous production processes fully replicable to these urban production plants, as contemplated by the parties' Agreement.  *Id.*, ¶ 32.  Mr. Sever was marginally responsive to Mr. Ataya's directives.  *Id.*

In the summer of 2019, Mr. Sever and Western Magnesium endeavored to restate their relationship going forward in order to retool leadership arrangements for the important push for process solidification and adapt to the corporate name change.  *Id.* at 8-9, ¶ 33.  Mr. Lee and Mr. Sever met in Washington State to discuss Mr. Sever's relationship with Western Magnesium.  *Id.* at 9, ¶ 34.  During this discussion, Mr. Sever demanded a short work week and cessation of duties with Western Magnesium within three years.  *Id.*  Mr. Sever had not engaged any third-party engineering firm, formulated no replicable production models, and cemented no engineering specifications sufficient for Western Magnesium to attract maximum investment capital.  *Id.*  Following this discussion, Mr. Ataya directed Mr. Sever to engage in the focal undertaking of production regimentation and process documentation, without response or success from Sever.  *Id.*, ¶ 35.

Mr. Sever failed to return messages timely, failed to report technical progress, failed to accept supervision, and failed to perform his duties as a director. *Id.*

During this period where Mr. Sever failed to perform his duties, several investors with intent to provide over $10 million in funding gave up on Western Magnesium due to Mr. Sever's abandonment which caused Western Magnesium to be unable to produce suitable bench processes and engineering specifications. *Id.*, ¶ 36. Without technical specifications, vendor Safe Harbor withdrew from a signed investment agreement that would have provided Western Magnesium with much-needed expansion capital. *Id.*

On July 22, 2019, Mr. Sever signaled his verbal intent to abandon continued high-level work with Western Magnesium in a rebalanced contractual relationship. *Id.*, ¶ 37. Mr. Sever refused to commit full time to effort to achieve the duties that were assigned to him by the company, in keeping with Mr. Sever's April 30, 2019 Agreement with Western Magnesium. *Id.*

On August 21, 2020, Mr. Sever was re-elected as a member of Western Magnesium's seven-member Board of Directors, a move by shareholders designed to stabilize Western Magnesium within the investment community. *Id.*, ¶ 39.

On or about September 17, 2020, Mr. Sever filed suit against Western Magnesium in British Columbia, claiming Western Magnesium "lists him as a

director" and seeks to have his status as director terminated as one of his purposed

remedies for compensation as a non-performing CTO.  *Id.*, ¶ 40.

## DISCUSSION

### I.    Two Motions to Dismiss

As a threshold matter, Plaintiff argues Defendant improperly filed two

motions to dismiss in violation of Fed. R. Civ. 12.  ECF No. 20.  Defendant filed

two motions to dismiss within the same day premised on 12(b)(6) for failure to

state a claim and the doctrine of the *forum of non conveniens*.  ECF Nos. 14, 16.

The *forum non conveniens* motion also raises a lack of venue argument under Rule

12(b)(3).  ECF No. 16.

Under Federal Rule of Civil Procedure 12(g)(2), a party that makes a motion

under Rule 12 "must not make another motion under Rule 12 raising a defense or

objection that was available to the party but omitted from its earlier motion.  Fed.

R. Civ. P. 12(g)(2).  A motion premised on Rule 12(b)(6) may be raised in any

pleading allowed or ordered under Rule 7(a), by a motion under Rule 12(c), or at

trial.  Fed. R. Civ. P. 12(h)(2).

Here, the Rule 12(b)(6) motion was timely filed.  ECF Nos. 13, 14.  The

second simultaneous motion to dismiss based on the doctrine of *forum non*

*conveniens* is not a motion made under Rule 12.  ECF No. 16.  To the extent Rule

12(b)(3) arguments are incorporated into the motion, the Court need not address

them.  Therefore, the second motion to dismiss is not barred by Rule 12(g)(2).

## II.    Judicial Notice

Defendant request the Court take judicial notice of the following exhibits:

(1) Notice of Civil Claim, (2) an Affidavit of James Sever submitted in the

Supreme Court of British Columbia, Vancouver Registry, (3) Supreme Court of

British Columbia, Vancouver Registry, "File Summary Report", (4) the British

Columbia "Limitation Act", (5) British Columbia Regulation 199/2020, (6) British

Columbia Order of the Lieutenant Governor in Council No. 655, (7) the British

Columbia "Interpretation Act", (8) Certificate of Incorporation of Western

Magnesium Corporation, and (9) the Bylaws of Western Magnesium Corporation.

*See* ECF No. 15.  Plaintiff does not object to these documents.

The Court may judicially notice a fact that is not subject to reasonable

dispute because it: (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Because the

Court need not rely on the content of these exhibits to reach the below disposition,

the Court declines to judicially notice the documents.  However, the Court

considers documents incorporated into the complaint, including the parties'

1 | contract that is the subject of the breach of contract claim.  *See United States v.*
2 | *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

3 | **III.    Doctrine of *Forum Non Conveniens***

4 | "[T]he appropriate way to enforce a forum-selection clause pointing to a
5 | state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl.*
6 | *Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).
7 | Under a traditional analysis, a party moving to dismiss based on *forum non*
8 | *conveniens* bears the burden of showing (1) there is an adequate alternative forum,
9 | and (2) that the balance of private and public interest factors favor dismissal.  *Ayco*
10 | *Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017).

11 | The Supreme Court altered the traditional *forum non conveniens* analysis
12 | where courts are to give a plaintiff's choice forum no merit and give no
13 | consideration to private interests in the event there is a valid forum selection
14 | clause.  *Atl. Marine*, 571 U.S. at 60-61.  Lower courts interpret *Atlantic Marine* to
15 | apply to mandatory clauses and continue to apply the traditional *forum non*
16 | *conveniens* analysis to permissive clauses.  *See PTW Energy Servs., Inc. v.*
17 | *Carriere*, No. 19-CV-01436-REB-NYW, 2019 WL 3996874, at *5 (D. Colo. Aug.
18 | 23, 2019) (collecting cases).

19 | //

20 | //

*A. Forum-Selection Clause*

A federal court sitting in diversity applies state law of the forum state to determine the validity of a forum-selection clause.  *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 963-64 (9th Cir. 2022).  Washington law follows the objective theory of contract interpretation to give undefined terms "their ordinary, popular meaning as provided in a standard English language dictionary."  *Nationwide Mut. Ins. Co. v. Hayles, Inc.*, 136 Wash. App. 531, 537 (2007).  As relevant here, "attorn" means "[t]o transfer (money, goods, etc.) to another."  Attorn, Black's Law Dictionary (11th ed. 2019).  While the Court finds no Washington case on point, courts interpreting clauses with "attorn" to generally be permissive without more language relating to a forum's exclusive jurisdiction.  *See PTW Energy*, 2019 WL 3996874, at *4.

Here, the "Agreement shall be governed by and construed in accordance with the laws of the Province of British Columbia and the parties hereby attorn to the jurisdiction of the courts of British Columbia (Vancouver registry)."  ECF No. 15 at 33.  Without more language providing for the exclusive jurisdiction in British Columbia, the Court finds this forum selection clause permissive rather than mandatory.  Therefore, the modified *Atlantic Marine* analysis does not govern and the Court will continue with a traditional *forum non conveniens* analysis that includes the weighing of both public and private interests.

1    *B. Adequate Alternative Forum*

2        A forum is an adequate alternative if a defendant is amenable to process in

3    that forum and the forum offers a satisfactory remedy to the plaintiff. *Carijano v.*

4    *Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011).  A forum is not

5    adequate if a plaintiff's suit would be time-barred by the forum's relevant statute of

6    limitations. *Id.* at 1235.  The Ninth Circuit noted district courts may cure this issue

7    by conditionally dismissing an action that requires a defendant to waive any statute

8    of limitations defense. *Id.*

9        Defendant asserts British Columbia is an adequate alternative forum.  ECF

10   No. 16 at 8.  Defendant is amenable to service of process and the parties have

11   agreed to attorn to the jurisdiction of British Columbia.  Moreover, Defendant

12   agrees to "waive his statute of limitations defense and stipulate to amended

13   counterclaims in the pending British Columbia matter" in the event the Court

14   dismisses this action.  ECF No. 22 at 5.  The Court finds British Columbia is an

15   adequate alternative forum provided that Defendant waives his statute of

16   limitations defense and stipulated to amending counterclaims.

17   *C. Private and Public Interest Factors*

18       Private interest factors include the residence of the parties and witnesses, the

19   forum's convenience for the parties, access to evidence, whether unwilling

20   witnesses can be compelled to testify, the cost of bringing witnesses to trial, the

enforceability of the judgment, and all other practical considerations that make a trial expeditious and inexpensive. *Ayco*, 862 F.3d at 950. Public interest factors include the local interest of the lawsuit, the district court's familiarity with the governing law, the burden on local courts and juries, the congestion of the court, and the costs of resolving a dispute unrelated to the forum. *Id.*

Defendant asserts the private interests favor dismissal where there is a parallel proceeding in British Columbia, the parties agreed to litigate in British Columbia by contract, evidence and witnesses are in British Columbia, and the convenience of the forum. ECF No. 16 at 11. Defendant asserts public interests favor dismissal where British Columbia has a substantial interest in the pending parallel litigation, British Columbia has familiarity with its own law, and the Agreement was entered into in Canada. ECF No. 16 at 11. Defendant further asserts the Eastern District of Washington has no connection to this suit other than Sever residing therein. *Id.*

Plaintiff argues Defendant fails to explain how any of these factors favor dismissal. ECF No. 20 at 17. Defendant further proffers the following factors (some duplicative) submitted in support of the motion: (1) Western Magnesium's primary place of business was in Vancouver, British Columbia at the time of Mr. Sever's alleged breaches, (2) various current and former Western Magnesium employees, managers, members of the Board of Directors, and other witnesses are

located in British Columbia, (3) this Court does not have subpoena power over British Columbia residents, (4) the Agreement dictates that it is "governed by and construed in accordance with the laws of the Province of British Columbia and the parties hereby attorn to the jurisdiction of the courts of British Columbia", (5) the British Columbia legal system is in a far better position to interpret its own laws, and (6) litigation between the same parties involving the same issues have been pending in British Columbia for two years.  ECF No. 22 at 5-6.

These private and public interest factors weigh strongly in favor of dismissing this action as British Columbia is the more appropriate forum.  The Court finds conditional dismissal (upon Defendant's wavier and stipulation) appropriate under the doctrine of *forum non conveniens*.  The Court need not address the parties' Rule 12(b)(6) arguments as an alternative basis to dismiss the action.

## IV.    Request for Attorneys' Fees

Defendant requests attorneys' fees under Western Magnesium's Certificate of Incorporation and Article VII of the Bylaws for defending the present action. ECF No. 16 at 12-14.  Plaintiff asserts that Article XI of the Bylaws provides for the "sole and exclusive" jurisdiction for any suit asserting a claim under the Bylaws in the Court of Chancery of the State of Delaware.  ECF No. 20 at 17-18.

Defendant's request for attorney fees is premature as this Order is not deciding substantive issues, including interpretation of Western Magnesium's Bylaws. Therefore, Defendant's request for fees is denied.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (ECF No. 14) is **DENIED as moot**.

2. Defendant's Motion to Dismiss Under Doctrine of *Forum Non Conveniens* (ECF No. 16) is **GRANTED**. The Court **DISMISSES** this case without prejudice, subject to the condition that Defendant waive the statute of limitations defense and stipulate to amending counterclaims in the pending British Columbia action, if Plaintiff so chooses.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED September 27, 2022.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 14